<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DARYL FALLAS,<br><br>    Plaintiff,<br><br>  v.<br><br>JUSTINE DIGERONIMO, ESQ., et al.,<br><br>    Defendants. | Civil Action No. 23-04100 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

  This matter comes before the Court upon Defendants Justine Digeronimo, Esq., and South Jersey Legal Services Inc.'s Motion to Dismiss pro se Plaintiff Daryl Fallas's Complaint under Federal Rule of Civil Procedure (Rule) 12(b)(1) for lack of subject-matter jurisdiction. (ECF Nos. 1, 8.)  Plaintiff opposed the Motion to Dismiss.  (ECF Nos. 9, 10.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED**.

**I. BACKGROUND**

  **A. Factual Allegations**

  This is a legal malpractice action stemming from a probate case in the Superior Court of New Jersey, Monmouth County, Docket No. MON-P-214-17.  (ECF No. 1 at 2-3.[1])  Plaintiff's

---

[1]  Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

bases for subject-matter jurisdiction are his "right to attorney/client privilege," "due process," and "legal malpractice." (*Id.*)

Plaintiff alleges that he hired Digeronimo, an attorney with South Jersey Legal Services, Inc. (SJLS), "sometime in 2016 for work regarding financials, such as filing bankruptcy." (*Id.* at 3; ECF No. 8.) Plaintiff then "put [Digeronimo] with [his] father to redo his will of 2004." (ECF No. 1 at 3.) Plaintiff states that "the key part of the change [to the will] was giving me a life estate so I couldn't be forced out." (*Id.*)

Plaintiff's father died on January 18, 2017, and the will was filed with the probate court on February 6, 2017. (*Id.*) Plaintiff appears to allege that in the state-court proceedings concerning his father's will, a dispute with an opposing party led to an unfavorable disposition of the estate for Plaintiff, particularly as to the sale of property. (*See id.*) Plaintiff alleges that "they . . . convince[d] the Court I had und[ue] influence over my father," using "[Digeronimo] with her transcribed phone conversations with me []as their star witness." (*Id.*) As a result, Plaintiff was evicted from his home of 50 years, causing him "embarrassment and shame" as his personal property was forcibly removed. (*Id.* at 4.)

Plaintiff thus seeks "the minimum [he] would have been due [from] the estate upon my determining sale price and date: . . . $775,168.21." (*Id.*) Plaintiff also seeks $18 million to ensure "a worry-free environment . . . for the next 30 years," and punitive damages of an additional $18 million for "being ripped out of my home and away from family and friends." (*Id.*)

  **B.**  **Procedural History**

On August 1, 2023, Plaintiff filed his Complaint. (ECF No. 1.) Shortly after, this Court *sua sponte* ordered Plaintiff to show cause as to why this case should not be dismissed for lack of subject-matter jurisdiction. (ECF No. 4.) Plaintiff responded that he has "evidence of violations

2

of [his] 14th Amendment right of due process" and "evidence of corruption, collusion, conspiracy to commit fraud and obstruct Justice," which he believes "may warrant action under the Federal RICO Act." (ECF No. 7 at 1.) Plaintiff added that prosecution of his case "will require Discovery and Subpoena power." (*Id.*)

On August 25, Defendants moved to dismiss based on Plaintiff's failure to raise a federal question establishing subject-matter jurisdiction. (ECF No. 8.)

Plaintiff submitted two opposition filings with additional details to establish subject-matter jurisdiction. (ECF Nos. 9, 10.) In the first, Plaintiff contends that because he is homeless, living in hotels, and maintaining a permanent address at "a federal building called the United States Postal Service" to "keep [his] driver's license and . . . receive important letters and such," he has "no home jurisdiction; unless considering the post office my home address, in which case we can say I live on Federal property and therefore this Court has Federal jurisdiction." (ECF No. 9 at 1.) Plaintiff also elaborates on his show-cause filing, describing his case as one of "corruption, collusion and conspiracy to commit fraud and obstruct justice" arising from "two different cases and two different judges" — one case concerning his bankruptcy and the other case concerning his father's will. (*Id.* at 1-2.) Given the implications of his claims, he says, Plaintiff "ha[s] every reason to doubt that [he] could ever get Justice in the New Jersey Court System." (*Id.* at 1.) In his second filing, Plaintiff describes several of his negative experiences in state court,[2] asking the

---

[2]  Specifically, Plaintiff describes an incident in 2007, when a state-court judge who mistakenly answered Plaintiff's call to chambers would not speak with Plaintiff about his case and later ruled against Plaintiff; an incident in 2009, when a small-claims debt-collection suit against Plaintiff ended in settlement, which Plaintiff believes evinces the fraudulent nature of the suit; an incident in 2010, when a different state-court judge threatened Plaintiff with sanctions if he continued filing motions in the trial court instead of proceeding to the appellate court; a state-court case where the Presiding Judge of the Chancery Division ruled against Plaintiff and awarded Plaintiff's sister the proceeds of their late father's life insurance policy; the decision of the judge in the probate case denying Plaintiff's motion to transfer venue from Monmouth County to

Court to exercise subject-matter jurisdiction because "it would be unreasonable for [Plaintiff] to expect fair treatment in New Jersey courts after what [he has] been through." (ECF No. 10 at 4.)

**II.    LEGAL STANDARD**

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). On a facial attack, the court "accept[s] the complaint's well pled allegations as true, and review[s] 'the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff." *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). On a factual attack, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"Federal courts, as courts of limited jurisdiction, have an obligation to establish subject matter jurisdiction, raising it *sua sponte* if necessary." *United States v. Port Imperial Ferry Corp.*, Civ. No. 16-2388, 2023 WL 2535302, at *4 (D.N.J. Mar. 16, 2023) (citing *Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995)). If a court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action because subject matter jurisdiction "call[s] into question the very legitimacy of a court's adjudicatory authority." *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007); *see also Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005) ("[The court is] required to consider the issue of subject matter jurisdiction,

---

Middlesex County, where Plaintiff lived, and refusing to replace the latest will with Plaintiff's newly found "handwritten will by [his] father dated many months prior to the will in question." (*See* ECF No. 10.)

even though neither party contends that it is lacking." (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986))). "Where a district court lacks subject-matter jurisdiction, its disposition of such a case will be without prejudice." *Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) (citing *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997)).

## III.   DISCUSSION

Defendants argue that Plaintiff has not raised a federal question, as Plaintiff has "pled a claim for legal malpractice relating to state-law wills and estate administration." (ECF No. 8-1 at 9.) The Court agrees. Plaintiff's bases for subject-matter jurisdiction are that (1) Defendants' divulging privileged communications in the probate proceedings violated of his Fourteenth Amendment due process rights (ECF No. 1 at 1); (2) Plaintiff's homelessness and use of the U.S. Postal Service as a permanent address either establishes diversity jurisdiction or otherwise confers subject-matter jurisdiction on this Court (ECF No. 9 at 1); and (3) given his proffered evidence of corruption in the state-court system, Plaintiff cannot get a fair hearing in state court (ECF No. 10 at 4). Based on the Court's review of the record, Plaintiff has not pled an adequate basis for federal subject-matter jurisdiction.

### A.   Federal Question Jurisdiction Under 28 U.S.C. § 1331

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that such jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[T]o satisfy the well-pleaded complaint rule, '[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Highview Terrace Apartments v. Abulkhair*, Civ. No. 20-2383,

2021 WL 825472, at *2 (D.N.J. Mar. 4, 2021) (quoting *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986)).

When the plaintiff is pro se, the Court must construe the pleadings liberally.  Courts "tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (explaining courts' obligation as to pro se complaints).  Still, "there are limits to our procedural flexibility"; "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Mala*, 704 F.3d at 244.

In Plaintiff's form complaint, Plaintiff selected "Federal Questions" as the basis for federal court jurisdiction.  (ECF No. 1 at 2.)  As to the "federal Constitutional, statutory or treaty right" at issue, Plaintiff wrote "right to attorney/client privilege," "due process," and "legal malpractice."  (*Id.*)  Plaintiff has not, however, pled the essential element necessary to raise a federal question.

Plaintiff's recourse for a breach of the attorney-client privilege is a legal malpractice claim, and a legal malpractice claim does not give rise to a federal question.  *See Westcor Land Title Ins. Co. v. Alicea*, Civ. No. 19-8474, 2019 WL 6724311, at *4 (D.N.J. Dec. 10, 2019) (listing the existence and breach of an attorney-client relationship as elements for a legal malpractice claim under New Jersey law); *see also Tidwell v. Bembry*, 133 F. App'x 26, 28 (3d Cir. 2005) ("The District Court correctly concluded that subject matter jurisdiction could not be premised on 28 U.S.C. § 1331 because [plaintiff's] claims of legal malpractice did not give rise to a federal question.").  Because Plaintiff has not identified a basis other than the divulgence of privileged communications as support for his assertion of a due process violation, he has not asserted a protection under the Fourteenth Amendment to the United States Constitution that could raise a

federal question. *See James v. Superior Ct. of New Jersey*, Civ. No. 21-16769, 2023 WL 4669484, at *3 (D.N.J. July 20, 2023) (discussing requirements for asserting due process rights under the Fourteenth Amendment).

Nor can Plaintiff establish subject-matter jurisdiction with his passing mention of "the Federal RICO Act," or the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962.  (ECF No. 7 at 1.)  Indeed, Plaintiff's Complaint does not plead or otherwise describe a federal civil RICO claim.[3] (*See generally* ECF No. 1.)  Though courts reviewing a pro se pleading must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), the sum of Plaintiff's filings indicates that he does not assert a federal civil RICO claim against Defendants.  The only time that Plaintiff mentions "RICO" is in his show-cause filing, where he notes that he believes that "[his] evidence may warrant action under the Federal RICO Act," and that "before continuing with this case as a Civil matter, [Plaintiff is] willing to share everything [he has] and know[s] about this with a federal prosecutor."  (ECF No. 7 at 1.)  Later, in his opposition papers, Plaintiff discusses the prospect of "becom[ing] a witness for the prosecution" for a potentially forthcoming "case of corruption, collusion and conspiracy to commit fraud and obstruct justice," in which case he "won't be able to be the pro se litigant should that take place."  (ECF No. 9 at 1.)

The Court construes Plaintiff's submission as his support for his assertion that he wishes to proceed in federal court because he has been denied "fair treatment in New Jersey courts."  (ECF No. 10 at 4.)  Courts in this Circuit have rejected similar assertions as bases for subject-matter jurisdiction. *See, e.g.*, *Turner v. Children's Hosp. of Philadelphia*, 378 F. App'x 124, 126 (3d Cir.

---

[3]   If Plaintiff wishes to state a federal civil RICO claim, he must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998).

7

2010) (holding that a pro se plaintiff's claim that her state-court proceedings were unfair was inextricably intertwined with state court's judgment and thus barred by the *Rooker-Feldman* doctrine); *Topfer v. Topfer*, Civ. No. 18-01181, 2018 WL 8997509, at *5 (M.D. Pa. Dec. 10, 2018), *report and recommendation adopted*, 2019 WL 3778709 (M.D. Pa. Aug. 9, 2019) (rejecting a plaintiff's claim of injury "arising from any 'unfair' and final State Court orders entered against him during the divorce proceedings" as barred under by the *Rooker-Feldman* doctrine).[4]

To be sure, the *Rooker-Feldman* doctrine does not deprive a federal court of jurisdiction in a 42 U.S.C. § 1983 action alleging that the plaintiff's loss in a state-court action resulted from a conspiracy between the defendants and certain members of the state judiciary. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 172 (3d Cir. 2010).[5] Indeed, the Third Circuit Court of Appeals has recognized that the *Rooker-Feldman* doctrine does not bar a plaintiff's federal action arising from injuries suffered not from a state-court judgment, but from the defendant's wrongful conduct in a state-court proceeding. *Id.* at 167-68, 171-72 (discussing *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006); then *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), *overruled by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023); then *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002)); *see also Vuyanich v. Smithton Borough*, 5 F.4th 379, 386 (3d Cir. 2021) ("When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction." (quoting

---

[4] The *Rooker-Feldman* doctrine bars any such attempt to use a federal trial court as a court of appeals from state-court judgments. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

[5] "[P]rivate parties who corruptly conspire with a judge in connection with [an official judicial act] are . . . acting under color of state law within the meaning of § 1983." *Great W. Mining*, 615 F.3d at 176 (quoting *Dennis v. Sparks*, 449 U.S. 24, 29 (1980)) (alterations added in *Great W. Mining*).

8

*Great W. Mining*, 615 F.3d at 167)). In that event, the plaintiff's claim for damages must be "based on an alleged independent violation of [the plaintiff's] constitutional rights" — "the right to an impartial forum." *Great W. Mining*, 615 F.3d at 172 (citation omitted).

But here, Plaintiff has not shown that he wishes to plead such a claim. Plaintiff alleges that Defendants' divulgence of privileged communications in the probate case violated his Fourteenth Amendment due process rights. (*See* ECF No. 7.) If Plaintiff attributes that violation to collusion among state-court judges and Defendants to conspire against him, Plaintiff must say so. Indeed, Plaintiff's submissions include no facts or assertions from which the Court could infer that Plaintiff intends to assert a claim against Defendants like the § 1983 claim asserted in *Great Western Mining & Mineral Company v. Fox Rothschild LLP, et al.*, discussed above. For instance, Plaintiff provides no factual allegations of a conspiracy in the probate case that the Court could liberally construe for Plaintiff. Nor does Plaintiff even mention § 1983. Rather, Plaintiff expresses his desire to be in federal court based only on his general distrust of the Superior Court after years of unpleasant experiences in the state-court system. That general distrust is not enough to establish a federal question.

To be clear, the Court does not dismiss Plaintiff's suit under Rule 12(b)(1) for lack of jurisdiction due to merits-related defects. Although "[a] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous, [d]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Davis*, 824 F.3d at 350 (internal citations

and quotation marks omitted). "[W]hen a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Id.* (internal citation and quotation marks omitted).[6]

Here, the defect is not that Plaintiff's claim is unsubstantiated, but that Plaintiff has not made clear that he even wishes to assert a claim that might raise a federal question, like the one in *Great Western Mining*. The Court does not read such a claim into Plaintiff's suit.

Plaintiff also seeks damages of $775,168.21 as "the minimum [he] would have been due [from] the estate upon [his] determining sale price and date." (ECF No. 1 at 4.) An award of those damages, from what the Court can gather, would not require overturning the state court's disposition of estate property. *See Vuyanich*, 5 F.4th at 387 ("And importantly, the [plaintiffs] did not ask the District Court to overturn the June 18, 2019 state-court order," which the plaintiffs asserted was "invalid," "but rather sought damages for the actions Defendants took under the guise of implementing that order."); *Great W. Mining*, 615 F.3d at 173 ("[W]hile [plaintiff]'s claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for [plaintiff] to prevail."). But to recover more than nominal damages for a due process violation, Plaintiff "would have to show that the adverse state-court decisions were entered erroneously." *Great W. Mining*, 615 F.3d at 173. Plaintiff alleges nothing to that effect.

In sum, Plaintiff's complaint raises no federal question under § 1331.

---

[6] Indeed, Defendants launch a facial attack — that Plaintiff does not allege subject-matter jurisdiction — requiring the Court to "treat the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

### B. Other Basis for Jurisdiction

Plaintiff also states that he has "no home jurisdiction; unless considering the post office my home address, in which case we can say I live on Federal property and therefore this Court has Federal jurisdiction." (ECF No. 9 at 1.) To the extent that Plaintiff believes that provides grounds for diversity jurisdiction under 28 U.S.C. § 1332, the Court disagrees. Even if he does not have a permanent address, Plaintiff has represented to the Court that he resides in New Jersey. (*Id.*; *see generally* ECF Docket Sheet.) Since the record indicates that Defendants are citizens of New Jersey (*see* ECF Nos. 1, 8), the Court lacks diversity jurisdiction over this case. *See, e.g., Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 111 (3d Cir. 2015).

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice. Plaintiff shall have 30 days to file an amended complaint to the extent that he can cure the deficiencies identified in this Memorandum Opinion. An appropriate Order follows.

Dated: March 26, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE